NOT FOR PUBLICAITON

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TOLL JM EB RESIDENTIAL URBAN RENEWAL LLC,** | Civil Action No. 16-5422 (PGS) |
| **Plaintiff,** | |
| v. | MEMORANDUM OPINION |
| **TOCCI RESIDENTIAL, LLC,** | |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge**

  Currently pending before the Court is Plaintiff Toll JM EB Residential Urban Renewal LLC's ("Toll") motion to amend its Complaint in order to (1) add a new claim for fraud in the inducement, including fraud by omission, against Defendant Tocci Residential, LLC ("Tocci R"); (2) add two new Defendants to the matter:  Tocci Building Corporation (Tocci BC") and John Tocci, Sr. ("John Tocci'); (3) assert a veil piercing claim against both Tocci BC and John Tocci to hold each liable for the obligations of Tocci R; (4) assert claims for breach of contract and breach of the obligation of good faith and fair dealing directly against Tocci BC and John Tocci; (5) add Tocci BC to its declaratory judgment claim; and (5) assert a claim for fraud in the inducement, including fraud by omission, against Tocci BC and John Tocci. [Docket Entry No. 158].  Tocci R has opposed Toll's motion to amend on futility grounds.  The Court has fully reviewed the arguments made in support of and in opposition to Toll's motion.  The Court considers Toll's motion to amend without argument pursuant to L.Civ.R. 78.1(b).  For the reasons set forth more fully below, Toll's motion to amend is GRANTED in part and DENIED in part.

## I. Background and Procedural History

The Court presumes a familiarity with the nature and history of this litigation. As a result, not all the details of same are recited herein. Instead, the Court focuses on the facts most relevant to the pending motion to amend.

Broadly, this case arises out of a Construction Management Agreement (the "CM Agreement") executed by Toll and Tocci R on December 27, 2013. The CM Agreement concerned the construction of a 400-unit luxury apartment complex in East Brunswick, New Jersey (the "Golden Triangle Project" or the "Project"). Tocci R was hired as the Construction Manager on the Project. Approximately 2 years after entering into the CM Agreement, Toll terminated same because of delays and workmanship defects allegedly caused by Tocci R. Toll filed suit against Tocci R in New Jersey State Court on July 21, 2016. In its Complaint, Toll brought claims against Tocci R for breach of contract, breach of the obligation of good faith and fair dealing, and for a declaratory judgment that Toll lawfully terminated Tocci R for default of its obligations under the CM Agreement. (*See* Docket Entry No. 1-1).

Tocci R removed the case to Federal Court on September 7, 2016. (Docket Entry No. 1). Shortly thereafter, on September 14, 2016, Tocci R filed its Answer to Toll's Complaint, which was amended on September 29, 2016. (Docket Entry Nos. 4 and 5). Along with its Amended Answer,[1] Tocci R also filed a Counterclaim against Toll. In its Counterclaim, Tocci R asserts claims against Toll for breach of the CM Agreement, breach of the implied covenant of good faith and fair dealing, violation of the New Jersey Prompt Pay Act and unjust enrichment. (*See* Docket Entry No. 5).

---

[1] Tocci R included a Counterclaim with its original Answer. Substantively, both Counterclaims are essentially the same.

2

While Tocci R denies defective workmanship, to the extent any existed, Tocci R claims it was caused by its subcontractors. As a result, on March 23, 2017, Tocci R filed a Third Party Complaint against 9 subcontractors who worked on the Project for breach of contract and for indemnification and contribution. (*See* Docket Entry No. 17). Some of these Third Party Defendants have filed Fourth Party Complaints. For purposes of Toll's pending motion to amend, these third and fourth party claims are not pertinent.

On November 14, 2016, prior to the Third and Fourth Party Defendants being added to this matter, the Court conducted the Initial Pretrial Conference in this case. Thereafter, on November 16, 2016, the Court entered the first Scheduling Order governing discovery, which has since been revised. (Docket Entry No. 12).

With respect to the current status of discovery, the parties negotiated an e-discovery protocol, and Toll and Tocci R have engaged in significant paper discovery, exchanging and responding to document requests and interrogatories. Some written discovery has been exchanged with the Third Party Defendants as well. Depositions, except for the Rule 30(b)(6) depositions of Toll and Tocci R's damages witnesses, however, have not been conducted. Thus, discovery remains open.

On October 18, 2018, the Court stayed discovery in order to position the case for mediation. Prior to mediation, the Court directed Toll, first, and then Tocci R, to produce the aforementioned Rule 30(b)(6) witnesses to address their damages. (Docket Entry No. 132; Text Minute Entry of 5/7/2019). It took several months for the witnesses to be produced, which resulted in this case not being referred to mediation until July 8, 2019. (Docket Entry No. 153). The first mediation session was ultimately set to take place in early October 2019. Prior to same, the Court received correspondence from Toll seeking permission to file the instant motion to amend. The Court

initially denied that request and directed the parties to focus on mediation. Unfortunately, on October 30, 2020, the parties reported that Toll and Tocci R had reached an impasse at mediation. As a result, on November 6, 2019, the Court enter an Order granting Toll permission to file the instant motion to amend. (Docket Entry No. 157).

Through the motion, Toll seeks to amend its Complaint to add a new claim against Tocci R and to add two new Defendants to the matter: Tocci BC and John Tocci. With respect to Tocci R, Toll seeks to add a claim for fraud in the inducement, including fraud by omission, against it. As to Tocci BC and Jon Tocci, Toll seeks to assert (1) a veil piercing claim against both in order to hold each liable for Tocci R's obligations under the CM Agreement; (2) direct claims for breach of contract and breach of the obligation of good faith and fair dealing against both; and (3) a claim for fraud in the inducement, including fraud by omission, against both. Toll also seeks to add Tocci BC to its declaratory judgment claim. Tocci R opposes each of Toll's proposed amendments solely on futility grounds. As a result, the Court's analysis centers on same.

**II.     Analysis**

Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Here, the Court assesses futility as that is the sole basis for Tocci R's objections.

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To determine if an amendment is "insufficient on its face," the Court utilizes the motion to dismiss standard under Rule 12(b)(6) (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief[.]" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Additionally, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka*, 481 F.3d at 211.

The Court first examines Toll's proposed fraud claim against Tocci R, Tocci BC and John Tocci.  In order to state a claim for fraud under New Jersey law, a plaintiff must allege the following five elements; "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (N.J. 1997) (citing *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624-25 (1981)).  Further, to comply with Rule 9(b), these allegations must be pled with particularity: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  As such, "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Id*.

Here, Toll alleges that the following three misrepresentations were made:

1. In November 2013, John Tocci represented to Toll that Tocci Residential was the Multifamily division of Tocci Building Corporation at a time that he knew Tocci Residential had no employees and was under-capitalized.

2. When John Tocci signed the CM Agreement in December 2013, he represented that Tocci Residential was the Construction Manager[.]

3. When he signed the CM Agreement, he further represented that Tocci Residential employed various people to perform the construction management work, identifying eight of them as Key Employees of the Construction Manager.

(Reply Br. at 8; Docket Entry No. 161). Further, Toll alleges that all three representations were false and that John Tocci knew they were false at the time he made them. In addition, Toll asserts that John Tocci made these misrepresentations with the intent to induce Toll into entering the CM Agreement with Tocci R, that Toll reasonably relied on the misrepresentations and that Toll was damaged by same.

The Court finds Toll has sufficiently pled all elements of fraud under New Jersey law. Further, the Court finds that Toll has satisfied the pleading requirements of Rule 9(b) as its allegations are set forth with particularity. The Court notes that Tocci R does not actually challenge the specificity of Toll's pleading, but, instead, argues that Toll has failed to allege any material misrepresentation of presently existing or past fact. For example, Tocci R maintains that Toll has failed to set forth any facts that Tocci R was undercapitalized. In addition, Tocci R argues that even if this allegation is taken as true, Toll fails to explain how it is material to the parties' transaction or rises to the level of fraud. As such, Toll claims that John Tocci's representations regarding Tocci R being the Multifamily division of Tocci BC cannot serve as the basis of a fraud claim.

Similarly, with respect to Toll's allegations concerning Tocci R being the Construction Manager and representing that it had Key Employees, Tocci R argues that at the time Toll entered the CM Agreement, Toll knew that the Key Employees were employed by Tocci BC, not Tocci R. Tocci R points to the CM Agreement, arguing that it is a fully integrated document, which includes Exhibit I. Exhibit I specifically indicates that the Key Employees were employed by Tocci BC. Therefore, Tocci R contends that there was no misrepresentation. Tocci R emphasizes that, despite knowing who employed the Key Employees, "Toll made the business decision to enter into a contract with Tocci Residential, and not Tocci Building." (Opp. Br. at 12-13; Docket Entry No.

7

159). Tocci R claims that since Toll knew who employed the Key Employees at the time the CM Agreement was entered, Toll's proposed allegations fail to state a claim for fraud in the inducement.

The Court finds that Tocci R's arguments challenge the facts supporting Toll's proposed fraud claims as well as Toll's likelihood of success on the merits, not whether Toll has stated a viable claim for fraud under Rule 12(b)(6). The Court cannot, in the context of a motion to amend, convert the motion to dismiss analysis into a summary judgment examination. As a result, the Court finds that Toll has set forth a claim for fraud against Tocci R, Tocci BC and John Tocci that is not futile. Toll is, therefore, permitted to amend its Complaint to assert same.

The Court next turns to Toll's request to hold Tocci BC and John Tocci liable under the theory of piercing the corporate veil. In New Jersey, courts "begin with the fundamental propositions that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *State Dept. of Environ. Protection v. Ventron Corp.*, 94 N.J. 473, 500 (1983) (citations omitted). Thus, as a general rule, limited liability "will not be abrogated[.]" *Id*. Instead, the corporate veil will be pierced only "in cases of fraud, injustice, or the like." *Id*.

As this District has recognized:

> In New Jersey and most other jurisdictions, there are two overarching elements required to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."

*The Mall at IV Group Prop.s, LLC v. Roberts*, No. Civ.A. 02-4692 (WHW) 2005 WL 3338369, *3 (D.N.J. Dec. 8, 2005) (quoting William Meade Fletcher et al., *Fletcher Cyclopedia of the Law*

*of Private Corporations*, § 41.30 (perm. ed., rev. vol. 1999). The Court considers a number of facts in determining whether the first element has been satisfied. These include, but are not limited to the following set of non-binding factors:

> [G]ross undercapitalization, failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-function of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade of the operations of the dominant stockholder or stockholders.

*Id*. (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145 (3d Cir. 1988) (applying New Jersey law). With respect to the second element, a plaintiff "need not prove common law fraud…, but rather must meet the less rigid standard of 'fraud, injustice, or the like.'" *Id*. (quoting *Kuibyshevnefteorgsythez v. Model*, civ. A. No. 93-4919, 1995 WL 66371, *15 (D.N.J. Feb. 6, 1995) (citations omitted)). Importantly, "'injustice or the like' will suffice." *Kuibyshevnefteogsynthez*, 1995 WL 66371 at *15 (quoting *Allied Corp. v. Frola*, 701 F.Supp. 1084, 1088-89 (D.N.J. 1988)). The "over-arching principle [of veil piercing] is to prevent fraud, illegality or injustice through the illegitimate use of the corporate form." *Id*. at *13. "This flexible approach is consistent with the piercing doctrine's pedigree as a tool for doing equity." *Id*. (citing *Fortugno v. Hudson Manure Co.*, 51 N.J. 482, 500 (App. Div. 1958)). "If a court is satisfied that a 'subsidiary [i]s a mere instrumentality of the parent corporation,' or that 'the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent,' then it may pierce the corporate veil[.]" *N.J. Reg'l Council of Carpenters v. D.R. Horton, Inc.*, Civil Action No. 08-1731 (KSH), 2010 WL 2674474, at *2 (D.N.J. June 30, 2010) (quoting *Ventron*, 94 N.J. at 500-01 (internal quotations omitted)).

9

Here, the Court finds that Toll has sufficiently pled a veil piercing claim as to Tocci BC. In this regard, Toll has set forth numerous facts to support its allegation that Tocci R had no separate existence from Tocci BC, but, instead, they were alter egos. For example, among other allegations, Toll states:

- Tocci R had no employees;

- Tocci BC, through its employees, served as the Construction Manager on the Project;

- John Tocci is an owner of both Tocci R and Tocci BC;

- John Tocci is the Chief Enabling Officer of both Tocci R and Tocci BC;

- Tocci R and Tocci BC share the same address: 660 Main Street, Woburn, MA 01801;

- Tocci R does not have a website;

- Tocci BC has a website, which it used to promote the work done on the Project and promoted it as Tocci BC's own work;

- Tocci BC, not Tocci R, obtained the required insurance for the Project;

- Tocci BC held itself out as the Construction Manager for the Project to the East Brunswick Township officials;

- The subcontractors, vendors and suppliers for the Project communicated and did business with Tocci BC rather than Tocci R, including submission, receipt, approval, and, upon information and belief, payment of invoices;

- Tocci BC rather than Tocci R retained, received and approved payment of the invoices of the consultants/experts for the Project and this litigation; and

- Tocci R was undercapitalized.

(*See* Proposed Am. Compl. ¶¶ 7, 8, 152, 169-84).

Further, Toll has set forth sufficient allegations to indicate that adherence to the fiction of Tocci R's separate corporate existence would sanction a fraud or promote injustice. For example,

10

Toll sets forth the following examples of why piercing the corporate veil is necessary to promote justice and/or stop a fraud and/or otherwise stop Tocci R, Tocci BC and John Tocci from evading the law:

- Tocci BC and Tocci R have commingled funds and/or held themselves out as a single business or with confusing identities, to induce Toll to enter into the CM Agreement with Tocci R;

- Tocci BC used Tocci R, which, unbeknownst to Toll, did not have a genuine or separate business existence, to mislead Toll to believe that Tocci R rather than Tocci BC would perform the Construction Manager's obligations under the CM Agreement;

- Tocci BC created and structured Tocci R so as to inequitably shield Tocci BC from responsibility for the Construction manager's obligation under the CM Agreement while intending to reap the financial benefits of it;

- Upon information and belief, Tocci R was undercapitalized at the time of formation, at the time of reactivation and at the time it signed the CM Agreement;

- Upon information and belief, the only construction project ever ostensibly undertaken by Tocci R is the Project, which was managed for and by Tocci BC;

- By signing the CM Agreement, Tocci R entered into a relationship of trust and confidence with Toll and made certain misrepresentations, including that it employed various people to perform the construction management work, and that Tocci R was going to act as Construction Manager. Those representations were false;

- By its Counterclaim, Tocci R is seeking millions of dollars of damages from Toll at least several hundred thousands of dollars of which are costs allegedly incurred by Tocci BC, not Tocci R;

- It would be unjust and inequitable to permit Tocci R to proceed on its claim for damages that it has not incurred, but rather Tocci BC has allegedly incurred pursuant to the CM Agreement, while shielding Tocci BC from liability for the Construction Manager's acts and omissions pursuant to the CM Agreement; and

- Upon information and belief, Tocci R is insolvent.

(Proposed Amended Compl. ¶156).

Even when the Court discounts facts plead on information and belief, such as those regarding Tocci R's undercapitalization and insolvency, when the Court reviews Toll's remaining allegations, as a whole, the Court finds that sufficient facts have been stated to render its proposed veil piercing claim against Tocci BC non-futile. As a result, Toll shall be permitted to amend its Complaint to assert same.

The same, however, cannot be said regarding Toll's proposed veil piercing claim as to John Tocci. Toll alleges the following facts to support its attempt to hold John Tocci personally liable for Tocci R's obligations:

- John Tocci served as Chief Enabling Officer of Tocci R and Tocci BC;

- John Tocci served as Manager of Tocci R;

- John Tocci served as President, Treasurer and Director of Tocci BC;

- John Tocci, in his role as Chief Enabling Officer of Tocci BC, negotiated the CM Agreement with Toll;

- John Tocci, in his role as Chief Enabling Officer of Tocci BC, determined that Tocci R would be the signatory of the CM Agreement;

- Upon information and belief, John Tocci made that determination knowing that Tocci R had no employees and was undercapitalized;

- In such role, in November 2013 John Tocci advised Toll that Tocci R is the Multifamily division of Tocci BC;

- Upon information and belief, John Tocci so advised Toll, knowing that Tocci R had no employees and was undercapitalized;

- John Tocci executed the CM Agreement in his role as Chief Enabling Officer of Tocci R;

- In his role as owner and Chief Enabling Officer of Tocci BC, John Tocci, or other Tocci BC employees subject to his supervision and control, was able to divert Tocci BC employees from the Toll Project to other Tocci BC projects;

- In his roles as owner and Chief Enabling Officer of both Tocci R and Tocci BC, and in his roles as Manager of Tocci R and the President, Treasurer and Director of Tocci BC, John Tocci engaged in the following conduct of Tocci R and Tocci BC:

    a. Tocci BC's promotion on its website of the work on the Toll Project as Tocci BC's own work;

    b. Tocci R's failure to employ the Key Employees;

    c. The identification of eight Tocci BC employees, including three members of its Executive Team, as employees of Tocci R;

    d. Tocci R's failure to obtain its own insurance;

    e. Tocci BC's procurement of insurance for Tocci R;

    f. Tocci BC's conduct in holding itself out as the Construction manager to the public authorities;

    g. Tocci BC's conduct in dealing with the vendors and subcontractors as if it were the Construction Manager;

    h. Tocci BC's retention of the Construction Manager's experts and consultants on the Project; and

    i. The determination to seek through this action alleged damages that, if proven, belong to Tocci BC.

(Proposed Amended Compl. ¶¶ 7-8; 109-120).

Toll relies on these allegations to support its claim that John Tocci "controlled" and "totally dominated" both Tocci R and Tocci BC, such that "he was their alter ego." (*Id*. ¶¶ 102, 121, 123). The Court, however, finds that the facts alleged fail to support this contention. The evidence of John Tocci's "control" and "total domination" comprises John Tocci's positions as Chief Enabling Officer of Tocci R and Tocci BC, manager of Tocci R, and President, Director and Treasurer of Tocci BC, as well as conduct he allegedly engaged in while acting in said roles. This is insufficient. Unlike with Tocci BC, where Toll set forth allegations, even if nontraditional in the veil piercing context, to establish the unity of interest and ownership necessary to permit a veil

13

piercing claim, *i.e.,* Tocci BC and Tocci R shared the same physical address, Tocci R did not have a website while Tocci BC did and, in fact, used said website to promote work on the Project as its own, Tocci BC obtained the required insurance for the Project, Tocci R had no employees, and Tocci BC acted as the Construction Manager on the Project by staffing the Project with its own employees, dealing with the East Brunswick Township officials, doing business with the subcontractors, vendors and suppliers who worked on the Project, and approving payments and paying the invoices of consultants and experts hired in relation to the Project, no such allegations are pled with respect to John Tocci.  As such, while there were sufficient facts stated to suggest no separate existence between Tocci R and Tocci BC, the same cannot be said as to John Tocci.  Instead, the Court finds that "the bare-boned allegations of undercapitalization and common control and/or management," alleged regarding John Tocci, "do not rise to the level of plausibility required to survive a 12(b)(6) motion."  *Wrist Worldwide Trading GMBH v. MV Auto Banner*, Civ. No. 10-2326, 2011 WL 5414307, at *5 (D.N.J. Nov. 4, 2011).  As a result, Toll's request to amend its Complaint to add a veil piercing claim as to John Tocci, himself, is denied.

Next, the Court turns to Toll's request to assert claims for breach of contract and breach of the obligation of good faith and fair dealing directly against Tocci BC and John Tocci.  Generally, under New Jersey law, "an action on a contract cannot be maintained against a person who is not a party to it[.]"  *Comly v. First Nat'l Bank & Trust Co.*, 22 N.J. Misc. 123, 127 (1944).  Nevertheless, Toll argues that Tocci BC should be held directly liable for breach of contract and breach of the obligation of good faith and fair dealing because (1) Tocci BC acknowledged that it is the real party in interest by seeking its alleged damages in this action; (2) Tocci BC is incorporated by reference as the Construction Manager in the CM Agreement; (3) Tocci BC assumed Tocci R's obligations under the CM Agreement; and (4) Tocci R assigned its obligations

under the CM agreement to Tocci BC.  (*See* Proposed Amended Compl. ¶¶ 45-46, 134-135, 156).  Further Toll argues that John Tocci should be held directly liable for breach of contract and breach of the obligation of good faith and fair dealing because he totally dominated both corporate entities, failed to maintain their corporate identities and used each to perpetrate a fraud and injustice.

With respect to Toll's proposed direct breach of contract and breach of the obligation of good faith and fair dealing claims against Tocci BC, Toll relies primarily on the following 3 cases to support its argument that an exception to the well settled principle that an action on a contract cannot be maintained against a non-party is warranted here:  (1) *Hirsch v. Amper Financial Services, LLC*, 215 N.J. 174, 188 (2013); (2) *Medical Transcription Billing Corp. v. Randolph Pain Relief & Wellness Ctr.*, DOCKET NO. A-4673-17T2, 2019 WL 1785321, *6 (N.J. Super. App. Div. April 23, 2019); and (3) *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014).  All three cases, however, address whether a non-signatory to an arbitration agreement can be forced to arbitrate.  In so doing, all three cases rely on the United States Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009), which recognized that under state law, a contract can be enforced "against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel[.]'"  (Citation omitted).  *Arthur Andersen*, however, like *Hirsh*, *Medical Transcription Billing Corp.*, and *Griswold*, also utilized this proposition to address whether a non-signatory to an arbitration agreement can be forced to arbitrate.  Thus, the cases relied upon by Toll bear little similarity to that pending here.

Toll has not cited a single case outside of the arbitration context, and certainly not one with similar facts to those presented in this case, to support its argument that direct claims for breach of contract and breach of the covenant of good faith and fair dealing are maintainable against Tocci

BC, a non-signatory to the CM Agreement, under the circumstances presented. Given the general rule that actions on a contract can be maintained only against the parties to the contract, coupled with the lack of legal support substantiating a contract being enforced against a non-party under analogous circumstances, the Court finds that Toll's proposed direct claims for breach of contract and breach of the obligation of good faith and fair dealing against Tocci BC are futile; though, as set forth above, Toll shall be allowed to pursue its veil piercing claim against Tocci BC. Toll's request to amend its Complaint to assert these direct claims against Tocci BC is, therefore, denied.

Turning to Toll's proposed direct claims against John Tocci, the Court notes that Toll essentially relies on the same allegations it used to support its veil piercing claim to argue that John Tocci should be held directly liable for breach of contract and breach of the obligation of good faith and fair dealing. Having determined that Toll's proposed veil piercing claim against John Tocci is futile, for the same reasons, the Court finds that Toll's proposed direct claims for breach of contract and breach of the obligation of good faith and fair dealing also fail. Thus, even if the Court permitted Toll to pursue its proposed direct claims against Tocci BC, which it obviously has not, the Court would still find that these claims as to John Tocci are futile. As a result, the Court denies Toll's request to add direct breach of contract and breach of the obligation of good faith and fair dealing claims against John Tocci.

Lastly, the Court addresses Toll's request to add Tocci BC to its declaratory judgment claim. Having already determined that Toll's proposed fraud and pierce the corporate veil claims against Tocci BC are not futile, the Court shall also permit Toll to add Tocci BC to its declaratory judgment claim.

## III. Conclusion

For the reasons stated above, Toll's motion to amend is GRANTED in part and DENIED in part. An appropriate Order follows.

Dated: May 21, 2020

                                  s/Tonianne J. Bongiovanni
                                  **HONORABLE TONIANNE J. BONGIOVANNI**
                                  **UNITED STATES MAGISTRATE JUDGE**